**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roy Sonkowsky on behalf of his minor son,
Roy "Rocky" Sonkowsky,

Plaintiff,

v.

Board of Education for Independent School District No. 721; Independent School District No. 721; Richard Wilson, as an individual and in his official capacity; Kristina Madigan, as an individual and in her official capacity, and Joan Anderson, as an individual and in her official capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2700 ADM/AJB

---

Joni M. Thome, Esq., Minneapolis, MN, appeared for and on behalf of Plaintiff.

Marie C. Skinner, Esq., Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

On January 4, 2002, the Motion for Summary Judgment [Doc. No. 13] of Defendants Independent School District No. 721 ("ISD No. 721"), Richard Wilson ("Wilson"), Kristina Madigan ("Madigan"), and Joan Anderson ("Anderson"), was argued before the undersigned United States District Judge. Plaintiff Roy Sonkowsky ("Plaintiff" or "Sonkowsky"), on behalf of his son Roy "Rocky" Sonkowsky ("Rocky"), alleges free speech, due process and equal protection violations under the First and Fourteenth Amendments of the United States Constitution, disability discrimination under the Minnesota Human Rights Act ("MHRA"), and claims against ISD No. 721 for failure to train and supervise its employees. For the reasons set forth below, Defendants' Summary Judgment Motion is granted.

FILED 4-8-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 4-8-02
DEPUTY CLERK

## II. BACKGROUND[1]

Rocky was a nine year old fourth grade student at New Prague Intermediate School in New Prague, MN, Independent School District No. 721, during the 1999-2000 school year. Rocky is originally from Wisconsin, and is an avid Green Bay Packer fan.

During the 1999-2000 school year, Rocky's fourth grade class participated in the GridIron Geography curriculum. Students were assigned various cities in which NFL football teams were located. Rocky's teachers, Wilson and Madigan, knew Rocky was a Packers fan and therefore assigned Rocky to Green Bay, Wisconsin, for his GridIron Geography projects. Students worked in teams of two or three to complete assigned work and to earn extra credit. For one assignment, the students were directed to color a picture of a football player in the purple and gold team colors of the Minnesota Vikings. Rocky alleges that when he turned in his picture colored in the green and yellow team colors of the Green Bay Packers, he was told by Wilson he had not followed directions, and was to make another picture in purple and gold. Rocky again turned in a green and yellow picture, and Wilson again did not accept it. Rocky alleges that all the other students' purple and gold pictures were displayed on the classroom bulletin board, but his green and yellow version was not.

As part of the GridIron Geography curriculum, Rocky's class also entered the GridIron Geography Bulletin Board Contest. The contest was entered by more than 400 classes of fourth grade students throughout Minnesota. The prizes included a trip to Winter Park, the Vikings' practice facility, and a pizza lunch with Viking Wide Receiver Cris Carter. Winning schools also received other prizes, including computer software. Wilson and Madigan's classes at New Prague

---

[1] All disputed facts are viewed in the light most favorable to Plaintiff. See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Intermediate School won the contest.

As part of the contest, a photograph was taken of Rocky's class in front of their "GridIron Geography" bulletin board to send to the Minnesota Vikings, and a second photograph was taken of the class after notification that they had won the contest. Because the teachers felt it would be disrespectful for the students to wear jerseys of other football teams in the contest photo, they instructed the students to wear Vikings jerseys or colors for the photo. On the day one of the photos was taken,[2] Rocky was wearing a Brett Favre Packers jersey with a large number four printed on the front. Rocky's regular school attire was to wear Packers clothing about two or three days a week. Rocky Dep. at 12. Rocky alleges he was instructed to be in the photo, and that he must cover the Packers jersey. Defendants admit that Rocky was instructed to cover the jersey if he chose to appear in the photo. Wilson Aff. ¶ 12. Rocky covered the jersey with a sweatshirt, and appeared in the photo holding a folder bearing a Packers' logo. In the other photograph of the class, Rocky is shown holding up his Packers jersey.

To celebrate winning the contest, Wilson and Madigan's classes participated in the New Prague Holiday Lights Parade. Participation was optional for the students, and the students were told to dress for the December weather and wear Vikings clothing if possible. Rocky alleges that Wilson told him that if he showed up wearing a Packers jersey or jacket, he would not be allowed to participate in the parade. Rocky alleges that because his only jacket was a Packers jacket, he did not participate in the parade. The Defendants respond that Rocky did not return the note from his parent authorizing him to participate in the parade, and that at no time did any teacher or school official tell

[2] The parties dispute whether this photo was taken before or after notification that Rocky's class had won the contest. For purposes of this Motion, it does not matter.

Rocky that he could not participate in the parade.[3]

Rocky did not attend the December 14, 1999, field trip to Winter Park. Defendants assert Rocky was held back as a sanction for his behavior during the school year and during the week of December 6-10, 1999.[4] Anderson, Rocky's Principal, met with Rocky during the week of Dec. 6, 1999, to discuss his behavior, and told him that "if his behavior did not improve significantly, he would not go on the field trip to Winter Park." Anderson Aff. ¶ 13. Rocky had received several bus disciplinary write-ups throughout the year, and was required to be separated from several students because of his offensive behavior toward them.[5] Id. ¶ 14. On one of Rocky's conduct reports dated December 6, 1999, regarding a November 30, 1999, incident of misconduct on the bus, Anderson noted that "Rocky will lose his field trip if he can not behave on the bus runs." Wilson Aff. Ex. 6.

Rocky has an Individual Educational Plan for an emotional/behavioral disorder and a medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). Anderson Aff. ¶ 8. Anderson opined that Rocky did not exhibit the same level of control as his classmates. Id. ¶ 8.

On December 13, 1999, Rocky allegedly told Wilson and Madigan that he was going to say "Vikings Suck, Brett Favre Rules" to Cris Carter at Winter Park. Wilson Aff. ¶ 20; Madigan Aff.

---

[3] Neither of the two memos sent to the students regarding the parade suggest that Vikings wear was mandatory for participation in the parade. See Wilson Aff. Ex. 4. One of the students participating in the parade wore a Packers jacket. See Wilson Aff. ¶ 19; Madigan Aff. ¶ 12.

[4] School District records indicate that Rocky had 25 "behavioral consequences" in the second quarter of the 1999-2000 school year. Wilson Aff. ¶ 27.

[5] Anderson described that "Rocky has a repertoire of harassing and inappropriate comments that he has directed at other students and staff." Anderson Aff. ¶ 23. Anderson had received reports that Rocky had made comments to female students such as "I'm going to hump you" and passed notes stating "Lick it, love it and suck it." Id. ¶ 3. In a conference regarding Rocky's behavior, his father clarified this to mean "sex." Id. ¶ 4.

¶ 14. Anderson avers that the Rocky's proposed comment that the Vikings "sucked" would be a violation of the School District's Student Code of Conduct (providing that disrespectful student language is unacceptable) subject to disciplinary action under the School District Discipline Policy. Anderson Aff. ¶¶ 20-22. Subsequently, Anderson and Wilson decided that Rocky would not be permitted to attend the field trip to Winter Park. Anderson Aff. ¶ 15.

Rocky alleges he did not say he was planning to tell Cris Carter the "Vikings Suck," and that Wilson and Anderson told him he could not go on the field trip because he is "such a big Packer fan." Rocky Dep. at 15-16; Sonkowsky Dep. at 37. Sonkowsky alleges that Anderson and Williams told him Rocky could not go on the field trip because they were afraid Rocky would embarrass the school or the contest sponsors. Sonkowsky Dep. at 37.

Wilson prepared a special curriculum for Rocky to complete on the day of the field trip and sent it home with Rocky on December 13, 1999. Rocky did not complete the assignment or attend school on December 14, 1999, but instead stayed home and wrote a letter to Brett Favre. Sonkowsky Dep. at 64.

Sonkowsky alleges that Rocky's rights were deprived (1) when his homework assignment was not displayed by his teacher, (2) when he was told to cover his Packers jersey for the class photo, (3) when he was told he could not participate in the parade, and (4) when he was not allowed to attend the class field trip. Pl. Mem. in Opp. at 11.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

**B. Sonkowsky's § 1983 Claims**

The touchstone of the § 1983 action is "a deprivation of rights protected by the Constitution." Monell v. Department of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978). In a § 1983 civil action for deprivation of rights against a School District, a plaintiff must show (1) a deprivation of a right, privilege or immunity granted under the Constitution or federal law, (2) an act by the School District under color of State law in depriving that right, and (3) a causal link between the acts or omissions of the School District and the alleged deprivation of a federal right. See 42 U.S.C. § 1983 (2001); City of Canton, Ohio v. Harris, 489 U.S. 378, 394 (1989).

Sonkowsky alleges violations of § 1983 on three grounds. Compl., Count I. First, he alleges Rocky's right to free speech under the First Amendment of the Constitution was violated. Compl. ¶ 40. Second, he alleges Rocky's due process and equal protection rights under the Fourteenth

Amendment were violated. Id. Third, Sonkowsky alleges that the School District failed to adequately train, supervise and control Wilson, Anderson and Madigan. Id. ¶ 43. The threshold question for each of these claims is whether or not Rocky suffered a deprivation of a right protected by the Constitution.

It is well established that students do not shed their constitutional rights to freedom of speech at the schoolhouse gate. Tinker v. Des Moines Indep. Cmty. Sch. Dist., 3939 U.S. 503, 506 (1969). First Amendment rights of teachers and students are "applied in light of the special characteristics of the school environment." Id. Absent a constitutionally valid reason to regulate speech, students are entitled to freedom of expression of their views. Id. at 511. However, conduct by a student that for any reason materially disrupts class work or involves substantial disorder or invasion of the rights of others is not immunized by the constitutional guarantee of freedom of speech. Id. at 513.

Public school students' First Amendment rights are not automatically coextensive with the rights of adults in other settings. Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988). A school need not tolerate student speech that is inconsistent with its basic educational mission. Id. The level of maturity of the intended audience is a valid consideration for a School District. Id. at 271. In Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675 (1986), the Supreme Court rejected a First Amendment challenge made by students based in part on the students' age. While it is not the case that elementary school students are entitled to no First Amendment protection, Bethel and Hazelwood indicate that age is a relevant factor in assessing the extent of a student's free speech rights in school.[6] See Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 738 (7th Cir. 1994).

[6] In Bethel, a high school was allowed to suppress speech to protect 14 year old students from sexual innuendo at a voluntary school assembly. Bethel, 478 U.S. 675. In Hazelwood, a school was allowed to delete entire pages from a school newspaper because they touched on "sensitive topics." Hazelwood, 484 U.S. at 272.

The Supreme Court "has not suggested that fourth-graders have the free expression rights of high school students." Muller by Muller v. Jefferson Lighthouse Sch., 98 F.3d 1530, 1538 (7th Cir. 1996). In considering that age is a "critical factor" in student speech cases, the Seventh Circuit concluded that "it is unlikely that Tinker and its progeny apply to public elementary (or preschool) students," but that the Supreme Court has not directly decided the issue. Id. at 1538-39. Indeed, a "marketplace of ideas" is a less appropriate description of an elementary school than a University, or even a high school. Id.

Students have a constitutionally protected right to their education. See Goss v. Lopez, 419 U.S. 565, 574 (1975) (recognizing a student's legitimate entitlement to a public education as a property interest). There is no constitutional right for a nine year old to wear a Green Bay Packers jersey to elementary school. In Rocky's case, he was allowed to wear his Packers clothing at school at all times except during the contest photo session. Rocky's education was unaffected by the actions of the Defendants. His grades were never penalized, and he was not expelled from school as a result of his status as a Packers fan. While factual disputes exist between the parties, none of them relate to genuine issues of material fact. Even if all of Sonkowsky's allegations are presumed true, Rocky had no constitutional right violated by the School District or any of its employees when he was prevented from wearing his Packers jersey in the class photo, by failing to post his unsatisfactory homework assignment on the bulletin board, by his not participating in the optional parade, or by preventing him from going on the class field trip to Winter Park. None of these activities meaningfully affect Rocky's education as to invoke a constitutionally protected right. Because Rocky did not suffer a deprivation of a constitutionally protected right, Plaintiff's claims of a free speech violation under the First Amendment, due process and equal protection violations

under the Fourteenth Amendment, and failure of the School District to train, supervise and control Wilson, Anderson and Madigan, fail. Defendants' Motion for Summary Judgment on Count I is granted.

**C. Sonkowsky's Disability Discrimination Claim**

In Count II, Sonkowsky alleges that the School District knew Rocky was disabled by ADHD, as defined by Minn. Stat. § 363.01 Subd. 13, and discriminated against him because of his disability with conduct that was "so pervasive as to alter the terms and condition [sic] of Rocky's education." Compl. ¶ 48. Specifically, Sonkowsky alleges that Rocky was deprived the full utilization and benefit from his educational institution when he was not permitted to go on the class field trip. Compl. ¶ 49.

Under the MHRA, it is an unfair discriminatory practice for an educational institution to discriminate in any manner against any person because of disability. Minn. Stat. § 363.03 Subd. 5(1) (2001). There is no distinction between the analysis of a claim under the MHRA and the Americans with Disabilities Act ("ADA") in the context of educational services for disabled children. Moubry v. Independent Sch. Dist. 696, Ely, MN, 9 F.Supp.2d 1086, 1110 (D. Minn. 1998). To prevail on an ADA claim, a plaintiff must show (1) that he is a qualified individual with a disability, (2) that he was excluded from participation in a public entity's services, programs or activities, and (3) that such treatment was by reason of his disability. Id. at 1109. In the context of educational services, liability does not attach absent a showing of "gross misjudgment, or bad faith, on the part of the school officials." Id.

There is no dispute that Rocky has ADHD, and that he did not attend the class field trip. However, the School District has given a legitimate, nondiscriminatory reason for not permitting

Rocky to attend the field trip, namely his inappropriate behavior on the bus and in school leading up to the trip, and his alleged indication that he was planning on making disrespectful comments to Cris Carter while on the field trip. Rocky had been warned that his behavior might result in his not being permitted to go on the field trip, which was not a part of his education or graded curriculum. Anderson Aff. ¶ 13.

Anderson, Wilson and Madigan were also concerned that Rocky was planning to misbehave on the field trip. A teacher or school official does not have to be certain that a disruption will occur, but rather "the existence of facts which might reasonably lead school officials to forecast substantial disruption" is sufficient. Karp v. Becken, 477 F.2d 171, 175 (9th Cir. 1973). Such evidence has been demonstrated in this case. Moreover, school officials are not required to wait until a disruption actually occurs before they may act, but have a duty to prevent the occurrence of disturbances. Id. Sonkowsky has made no showing that this decision by Anderson and Wilson was made in bad faith or was a gross misjudgment. There is no evidence that Rocky's exclusion from the field trip was based on his disability. Absent specific facts demonstrated on the record, mere allegations that the true reason was because of Rocky's ADHD are insufficient to bar summary judgment. Krenik, 47 F.3d at 957. No MHRA violation occurred by preventing Rocky from attending the field trip. Defendants' Motion for Summary Judgment on Count II is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 13] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: April 8, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd